# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| T.M., J.M. and A.M.,<br><br>Plaintiffs,<br>v.<br><br>UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION, *et al.*<br><br>Defendants. | CIVIL ACTION NO.: 1:23-cv-01684 |

### PLAINTIFFS' RESPONSE TO JUNE 26, 2023 LETTER ORDER

Plaintiffs T.M., J.M., and A.M., through undersigned counsel, respectfully respond to this Court's June 26, 2023 Letter Order [ECF Doc. #10] as directed. The June 26, 2023 Letter Order ("Order") directs Plaintiffs to "provide briefing explaining why this case is properly in federal court." To do so, the Plaintiffs state the following:

### INTRODUCTION

As this Court notes in the Order, prior to the filing of this action a separate but related federal lawsuit was filed by plaintiff T.M. seeking to secure her release from involuntary detention, avoidance of forced injections against her will, and damages for violations of her constitutional rights protected by the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights. *See Doe v. Univ. of Md. Med. Sys. Corp., et al.,* Civ. No. SAG-23-1572. On June 26, 2023, a Notice of Dismissal was entered in that case. *See* Civ. No. SAG-23-1572 [ECF Doc. #20]. This Court also correctly notes in the Order that a hearing had been scheduled on T.M.'s Emergency Motion for a Temporary Restraining Order "on Tuesday, June 13, 2023 [at 11:00 a.m.]." The relief sought by T.M. in her Emergency Motion was a TRO and preliminary injunction enjoining the Defendants from detaining T.M. and ordering her

immediate release from the facility and enjoining the Defendants from forcibly injecting antipsychotic drugs into Plaintiff against her will.

On the same day as the scheduled federal hearing, Tuesday, June 13, 2023, two separate matters were also scheduled to be heard in the Circuit Court for Anne Arundel County **at 9:00 a.m.**: one regarding judicial review of an administrative order authorizing the Facility to inject T.M. with antipsychotic drugs against her will (Case No. C-02-CV-23-000902) and another regarding T.M.'s pending request for habeas corpus relief to secure her release from unlawful detention (Case No. C-02-CV-23-000910). T.M. thus faced the possibility of being injected with antipsychotic drugs against her will before the federal emergency TRO hearing could be heard later that day. To avoid this possibility and to secure her release, T.M.'s attorneys agreed to the terms of the Consent Order that is the subject of this separate action.[1]

## THE UNCONSTITUTIONAL CONDITIONS DOCTRINE

The "unconstitutional conditions doctrine" reflects "an overarching principle . . . that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.,* 570 U.S. 595, 604 (2013). Although the unconstitutional conditions doctrine arises most often in First Amendment contexts, the doctrine is not limited to infringement of First Amendment rights.[2] *See Koontz,* 570 U.S. at 604, 608 (citing *e.g., Memorial Hospital et al. v. Maricopa County et al.,* 415 U.S. 250 (1973)(finding unconstitutional a requirement that conditioned free healthcare upon a one-year

---

[1] The pending Motion for TRO [ECF Doc. #6] includes as Exhibit 1 a door camera video showing armed police visiting T.M.'s home the day of her release. Since her release from custody, she has received two additional in-person visits and has received two telephone calls from government officials. The family is deeply worried and troubled by this.

[2] This Court applied the doctrine in a First Amendment context in *Bethel Ministries, Inc. v. Salmon,* 2021 U.S. Dist. LEXIS 236859 (D. Md. Dec. 10, 2021).

residency requirement as violative of liberty interests protected by the Fourteenth Amendment). Indeed, *Koontz* itself applied the doctrine to infringement of rights protected by the Fifth Amendment. *Koontz,* 570 U.S. at 604.  In this case, the Complaint alleges that state actors coerced T.M. into giving up certain of her liberty interests protected by the Fourteenth Amendment to gain her freedom and to avoid involuntary injections of antipsychotic drugs. As the Complaint alleges, involuntary "commitment to a mental hospital produces 'a massive curtailment of liberty,'" *Vitek v. Jones,* 445 U.S. 480, 491-92 (1980)(quoting *Humphrey v. Cady,* 405 U.S. 504, 509 (1972)), and every adult, including T.M., "has a right to determine what shall be done with [her] own body." *Cruzan v. Director, Mo. Dept. of Health,* 497 U. S. 261, 269 (1990); *Washington v. Harper,* 494 U. S. 210, 229, 236 (1990)(forced administration of antipsychotic drugs).  The Constitution, specifically the liberty interests protected by the Fourteenth Amendment, restricts the power of government to interfere with a person's medical decisions or compel her to undergo medical procedures or treatments against her will.  *Id.*  Through the Consent Order, the state actor defendants achieved such restrictions by conditioning T.M.'s freedom upon her agreement to give up her right to control her own healthcare forever.

## CONSENT DECREES

"Consent decrees 'have attributes both of contracts and of judicial decrees,' a dual character that has resulted in different treatment for different purposes." *Local No. 93, Int. Asso. of Firefighters, et al. v. Cleavland,* 478 U.S. 501, 519 (1986)(quoting *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 235-237 (1975)).  Because the parties, not the court, define their terms, "the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve." *Local No. 93,*

478 U.S. at 522 (quoting *United States v. Armour & Co.,* 402 U.S. 673, 681-82 (1971)(emphasis by the Court)). "Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." *Id.* (citing *United States v. Ward Baking Co.,* 376 U.S. 327 (1964) (cannot enter consent decree to which one party has not consented)). "More importantly, it is the *agreement of the parties*, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Local No. 93,* 478 U.S. at 522 (emphasis added). "[T]he fact that the parties have consented to the relief contained in a decree does not render their action immune from attack on the ground that it violates . . . the Fourteenth Amendment" or for that matter, any other constitutional protection. *Local No. 93,* 478 U.S. at 526.

In the Order, this Court expressed concern that the Consent Order was "entered by a state court judge who is not a party to this lawsuit." Because we deal in this case with a consent order, the parties in the underlying action, not the state court judge, acted to coerce T.M. into giving up her constitutional rights. The state court judge is not a necessary party. Moreover, the Fourth Circuit recently reiterated that in cases like this one, the Eleventh Amendment immunity exception announced in *Ex Parte Young,* 209 U.S. 123, 160 (1908), "allows private citizens, . . . to petition a federal court to enjoin State officials in their official capacities from engaging in future [or ongoing] conduct that would violate the Constitution or a federal statute." *Indus. Servs. Grp., Inc. v. Dobson,* 68 F.4th 155, __ (4th Cir. May 16, 2023)(citing *Antrican v. Odom,* 290 F.3d 178, 184 (4th Cir. 2002)). By its terms, the Consent Order violates and will continue to violate into the future T.M.'s most fundamental liberty interests protected under the Fourteenth Amendment.[3] The

---

[3] The Consent Order also purports to impose obligations on T.M.'s parents, who were not parties in the underlying case. Under the "Consent Order," T.M.'s parents—J.M. and A.M.—must "remind, encourage, and monitor" T.M.'s "ingestion of her prescribed medications" and "immediately notify FIP and the Anne Arundel Crisis Team if [T.M.] becomes non-compliant with her medication." Putting aside the obvious due process concerns arising from the fact that T.M.'s

Supreme Court has long pointed out "that the [Fourteenth] Amendment makes void 'State action of every kind' which is inconsistent with the guarantees therein contained, and extends to manifestations of 'State authority in the shape of laws, customs, or judicial or executive proceedings.'" *Shelley v. Kraemer,* 334 U.S. 1, 14 (1948).

## THIS COURT HAS JURISDICTION

Multiple sources grant jurisdiction to the Court in this case. This action for declaratory and prospective injunctive relief is brought to address Defendants' ongoing deprivations of rights guaranteed by the United States Constitution, namely liberty interests protected by the Due Process Clause of the Fourteenth Amendment. Federal question jurisdiction therefore exists under 28 U.S.C. § 1331 and civil rights jurisdiction exists under 28 U.S.C. § 1343(a). Plaintiffs' claims for declaratory and injunctive relief are authorized by 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202. We do not read the Order as suggesting that the Court has any concern that it may lack jurisdiction; rather, this Court has expressed concerns regarding the Court "being asked to opine on the validity of a Consent Order entered by a state court" and "[i]ssues of abstention and standing" and questions whether this case might "belong in state court."

## THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY

The *Rooker-Feldman* doctrine is derived from Congress' assignment of appellate

---

parents were not parties in the case, these provisions implicate J.M. and A.M.'s First Amendment rights. Even if J.M. and A.M. had been parties, conditioning T.M.'s freedom upon their agreement to monitor T.M.'s ingestion of medications they believe to be harmful to their daughter and their agreement to report non-compliance to the State should T.M. stop taking the medication would likewise violate the unconstitutional conditions doctrine. Because their rights are affected by the Consent Order, T.M.'s parents also have standing in this case. *See Safelite Grp., Inc. v. Rothman,* 229 F.Supp.3d (D. Minn. 2017)(finding Safelite had standing to challenge a consent order entered in a case in which Safelite was not a party because the order indirectly injured Safelite)(citing *e.g. Kiser v. Reitz,* 765 F.3d 601, 607-09 (6th Cir. 2014); *Council of Ins. Agents & Brokers v. Molasky-Arman,* 522 F.3d 925, 931 (9th Cir. 2008); *Harrell v. The Florida Bar,* 608 F.3d 1241, 1257 (11th Cir. 2010); and *Jacobs v. The Florida Bar*, 50 F.3d 901, 903-05 (11th Cir. 1995)).

jurisdiction over final state court judgments to the Supreme Court in 28 U.S.C. § 1257(a).[4] *Thana v. Bd. of License Comm'rs for Charles County, Maryland,* 827 F.3d 314, 318-19 (4th Cir. 2016). "The doctrine thus holds that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Id.* at 319 (quoting *Lance v. Dennis,* 546 U.S. 459, 463 (2006)). The Supreme Court's decision in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005) "significantly altered [the Fourth Circuit's] interpretation of the *Rooker-Feldman* doctrine," *Jonathan v. Justice,* 41 F.4th 316, 340 (4th Cir. 2022)(quoting *Davani v. Va. Dep't of Transp.,* 434 F.3d 712, 713 (4th Cir. 2006)), and confined the doctrine to cases whose procedural postures mirror those in the *Rooker* and *Feldman* cases themselves. *Thana,* 827 F.3d at 320 (quoting *Exxon,* 544 U.S. at 291)). There are several reasons why the *Rooker-Feldman* doctrine does not apply in this case.

First, the *Rooker-Feldman* doctrine "bars a losing party in state court [only] 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the *state judgment itself* violates the loser's federal rights.'" *Exxon,* 544 U.S. at 287 (quoting *Johnson v. De Grandy,* 512 U.S. 997, 1005-1006 (1994)(emphasis added)); *Exxon,* 544 U.S. at 284 (the doctrine only applies where "state-court losers [are] complaining of injuries caused by state-court judgements. . . ."); *accord Payne v. Ford Motor Credit Co., LLC,* 2020 U.S. Dist LEXIS 160755, at *8, 2020 WL 5250287 (D. Md. Sept. 3, 2020) ("*Rooker-Feldman* 'applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself.'")(quoting *Davani,* 434 F.3d at 713)). Further, "[t]he mere fact that a plaintiff's claim 'challenges conduct that

---

[4] 28 U.S.C. § 1257(a) vests the Supreme Court with appellate jurisdiction over "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, . . ."

was previously examined in a state court action' does not bar the federal court's exercise of jurisdiction." *Id.* (quoting *Elyazidi v. SunTrust Bank,* 780 F.3d 227, 233 (4th Cir. 2015)).

The Fourth Circuit explained in *Hulsey v. Cisa,* 947 F.3d 246, 250 (4th Cir. 2020), that "A plaintiff's injury at the hands of a third party may be 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment." *Hulsey,* 947 F.3d at 250 (quoting *Hoblock v. Albany Cty. Bd. of Elections,* 422 F.3d 77, 88 (2d Cir. 2005)).  The Second Circuit's discussion in *Hoblock* is illustrative:

> Can a federal plaintiff avoid *Rooker-Feldman* simply by clever pleading – by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not. In the child-custody example given above, if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child. The example shows that in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments. The challenge is to identify such suits.
>
> The following formula guides our inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, *when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it*. Where a state-court judgment *causes the challenged third-party action*, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Hoblock,* 422 F.3d at 88 (emphasis added).  As was the case in *Hulsey,* Plaintiffs in this action are not complaining of an injury "caused by a state court judgment," 947 F.3d at 250 (citing *Exxon,* 544 U.S. at 284).

As explained *supra,* this action involves a consent decree the terms of which reflect solely the agreement of the parties.  Plaintiffs do not challenge any action taken *pursuant to* the Consent Order; rather the state court simply "ratified" or "acquiesced in" the agreement of the parties without punishing the state actors for infringing upon Plaintiffs' constitutional rights when it

entered the Consent Order.  For this reason, the *Rooker-Feldman* doctrine does not apply to this action.  *See Hulsey,* 947 F.3d at 250; *accord Thana,* 827 F.3d at 321 (plaintiff's claims were "premised on injuries allegedly caused by the [State] Board" rather than injuries arising from the consent order at issue in *Thana*).

Second, "the *Rooker-Feldman* doctrine applies [only to final] state court decisions, not ongoing state court proceedings." *Justice,* 41 F.4th at 341 (quoting *Jones v. McBride,* 2022 U.S. App. LEXIS 5934, 2022 WL 670873, at *1 (4th Cir. Mar. 7, 2022)(citing *Hulsey,* 947 F.3d at 250)); *accord Accohannock Indian Tribe v. Tyler,* 2021 U.S. Dist. LEXIS 238683, at *65-66, 2021 WL 5909102 (D. Md. Dec. 14, 2021)(noting a majority of Circuits find that an order pending appeal from a state trial court is not sufficiently final to apply the *Rooker-Feldman* doctrine.).[5] The Fourth Circuit in *Thana* indicated further that after *Exxon* the *Rooker-Feldman* doctrine would not be implicated unless a federal court has been called upon to "exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which the decision could be had,' 28 U.S.C. § 1257(a), . . . as was the case in both *Rooker* and *Feldman*." *Thana,* 827 F.3d at 321 (citing *Exxon,* 544 U.S. at 284, 291); *accord Payne v. Ford Motor Credit Co., LLC,* 2020 U.S. Dist LEXIS 160755, at *9, 2020 WL 5250287 (D. Md. Sept. 3, 2020)("the Fourth Circuit recently restricted application of the *Rooker-Feldman* doctrine to situations in which a district court is 'called upon to exercise appellate jurisdiction' over a final judgment from 'the highest court of a State in which a decision could be had.'")(quoting *Thana,* 827 F.3d at 321).  In other words, Plaintiffs have not "sought to bypass the Supreme Court's jurisdiction under 28 U.S.C. § 1257(a)," rather they have challenged the judgment by appealing it to the Maryland Appellate Court, "thereby remaining on track for potential review by the U.S. Supreme Court." *Thana,* 827 F.3d at 322.

---

[5] A Notice of Appeal from the was filed in the State court matter on June 28, 2023.

Third, the *Rooker-Feldman* doctrine applies only to "state court losers." *Lance v. Dennis,* 546 U.S. 459, 463 (2006). This means that *Rooker-Feldman* "does not bar actions by a nonparty to the earlier state suit." *Id.* at 464 (citing *Johnson v. De Grandy,* 512 U.S. 997, 1005-1006 (1994)); *see also Karcher v. May,* 484 U.S. 72, 77, (1987)("The general rule [is] that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom."). In this case, neither J.M. nor A.M. were parties to the underlying action in which the Consent Order was entered. They are, however, parties to this action. Nor is T.M. a "state court loser." The Consent Order was not a "loss" in state court for T.M., but rather a means to secure her freedom, which she was legally entitled to anyway. For all or any of these reasons, the *Rooker-Feldman* doctrine cannot properly apply in this case.

## ABSTENTION WOULD BE IMPROPER

The Supreme Court has repeatedly instructed that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996); *see, e.g.*, *Deakins v. Monaghan,* 484 U.S. 193, 203 (1988)("[T]he federal courts have a virtually unflagging obligation to exercise their jurisdiction . . . ." (internal quotation marks omitted)); *England v. La. State Bd. of Med. Exam'rs,* 375 U.S. 411, 415 (1964) ("'When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.'")(quoting *Willcox v. Consol. Gas Co.,* 212 U.S. 19, 40 (1909))); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L. Ed. 257 (1821)("[The Supreme Court] ha[s] no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.").

Abstention doctrines, therefore, constitute "extraordinary and narrow exception[s]" to a federal court's duty to exercise the jurisdiction conferred on it. *Quackenbush,* 517 U.S. at 716, 728.

9

To cabin application of abstention doctrines and ensure that abstention "remains the exception, not the rule," the Supreme Court has "carefully defined . . . the areas in which such abstention is permissible." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 359 (1989). Two possible abstention doctrine might conceivably apply in this case, and they are discussed separately below.  This Court may not abstain from exercising jurisdiction under either doctrine.

## *YOUNGER* ABSTENTION DOES NOT APPLY

In *Younger v. Harris,* 401 U.S. 37 (1971), the Court permitted federal courts to abstain from hearing cases that would interfere with a pending state criminal proceedings.  By 2013, *Younger* had been extended to permit abstention also in "civil enforcement proceedings" and "civil proceedings involving certain orders uniquely in furtherance of the State court's ability to perform their judicial functions." *Jonathan v. Justice,* 41 F.4th  316, 329 (4th Cir. 2022).  In *Sprint Communs., Inc. v. Jacobs,* 571 U.S. 69, 78 (2013), the Supreme Court held that the three categories described above "define *Younger's* scope."  The Fourth Circuit has explained:

> *Sprint* thus recast the earlier cases. Rather than establish anew in each case whether federal proceedings threaten important state interests or may interfere with state proceedings or whether litigants could have easily raised their federal claims in those state proceedings—the so-called *Middlesex* factors—*Sprint* directs courts to a rule of thumb: if the case falls into one of the three settled categories, courts should go on to determine if federal involvement will in fact put comity at risk, but if the case does not, courts need go no further, they can properly entertain their federal-question jurisdiction without worrying about stepping on state toes.

*Justice,* 41 F.4th at 329.  In other words, if a case does not fall into one of the three categories of cases described in *Sprint*, the *Middlesex* factors need not be considered, and the district court will have no discretion to abstain from exercising jurisdiction.  *See Justice,* 41 F.4th at 327 n3 (rejecting review for abuse of discretion and applying de novo review because the question was whether the district court had "authority *to* abstain" under such circumstances)(emphasis by the Court).

10

Because the instant action does not fall into one of the three settled categories described in *Sprint*, this Court has no authority to abstain under *Younger*.

The proceedings in the State court clearly were not criminal proceedings, and the pending appeal is plainly not from a criminal case. Nor may T.M.'s habeas case, the case in which the Consent Order was entered, be characterized as a "civil enforcement proceeding." "*Sprint* has characterized civil enforcement proceedings as cases 'brought by the State in its sovereign capacity' following an 'investigation' and upon 'the filing of a formal complaint or charges.'" *Justice,* 41 F.4th at 329-330 (quoting *Sprint,* 571 U.S. at 79-80); *Sprint,* 571 U.S. at 79 ("explaining that 'decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings' 'initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act.'"). By contrast, the State habeas case filed by T.M. in the State court was intended to protect T.M. from forced injections and to secure her freedom. *Compare Justice,* 41 F.4th at 330 ("By contrast, the *ongoing* individual hearings [in *Justice*] serve[d] to protect the children who would be plaintiffs in federal court.")(emphasis by the Court). This case clearly does not involve an ongoing civil enforcement action.

That leaves the third category, which *Sprint* defined as orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint,* 571 U.S. at 78. The Supreme Court first introduced this category in *Juidice v. Vail*, 430 U.S. 327 (1977), declining to review a state contempt order so as not to interfere with a process that "lies at the core of the administration of a State's judicial system" and ensures the courts' "orders and judgments are not rendered nugatory." *Id.* at 335-36 n.12. "Neither *Sprint* nor *Juidice* defined this category further, and the [Supreme] Court has invoked it just one other time, in *Pennzoil [Co. v. Texaco, Inc.],* 481 U.S. [1], 12-14 [(1987)], to reject a federal challenge to the constitutionality of Texas's appeal-bond

provisions." *Justice,* 41 F.4th at 330. "*Pennzoil*, the Court explained, was like *Juidice* in that it "involve[d] challenges to the processes by which the State compels compliance with the judgments of its courts." *Id.* at 330 (quoting *Pennzoil,* 481 U.S. at 14). Enjoining that process would not only "interfere with the execution of state judgments, but . . . do so on grounds that challenge the very process by which those judgments were obtained." *Id.* (quoting *Pennzoil,* 481 U.S. at 14). The Plaintiffs in this case do not seek to enjoin any ongoing contempt action to enforce the Consent Order.[6]

The possibility that a contempt action *might* be initiated in the future (should T.M. or her Parents fail to adhere to the Consent Order's mandates) is not enough to bring the current action challenging the Consent Order within the scope of *Sprint's* third category. That is, the mere possibility of a future contempt proceeding does not convert the Consent Order itself into an order issued "uniquely in furtherance of the state court[']s ability to perform [its] judicial functions." *Sprint,* 571 U.S. at 78. The Fourth Circuit recently rejected this very argument in *Justice*:

> [Defendant] points to no specific pending contempt orders this suit would undermine; it argues only that federal jurisdiction here would undermine the state courts' "ability" to issue them. But if that sufficed to cram state-court proceedings into *Younger*'s third category, we would be hard pressed to find an order that would *not* do [so]. Certainly, the same rationale would apply to any partial summary judgment. Or even a mine-run discovery dispute. A party resisting federal litigation would always be able to claim that future state orders *might* be necessary to "oversee[ ] compliance" with initial ones and that any parallel federal litigation *might* inhibit state authority to do so. Fortunately, we do not run our judicial system on maybes and what-ifs. We presume court orders will be obeyed. And only in the rare cases they are not—where a State's power to ensure "compliance with the judgments of its courts," *Pennzoil,* 481 U.S. at 13-14, or "vindicate[ ] the regular operation of its judicial system," *Juidice,* 430 U.S. at 335, is in jeopardy—do we abstain. That explains why, in *Younger'*s entire history, the Court has invoked this category just twice.

---

[6] Nor would such an action be appropriate since T.M. and her parents have complied fully with the Consent Order's mandates.

12

*Justice,* 41 F.4th at 331. Because this case does not fall into any of the three settled categories described in *Sprint*, this Court has no authority to abstain from its "strict duty to exercise the jurisdiction that is conferred upon [it] by Congress." *Quackenbush,* 517 U.S. at 716; *Justice,* 41 F.4th at 327 n3.

## *COLORADO RIVER* ABSTENTION DOES NOT APPLY

It is well-settled that "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Servs., Inc. v. Maryland,* 411 F.3d 457, 462 (4th Cir. 2005). "Despite what may appear to result in a duplication of judicial resources, 'the rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *McLaughlin v. United Va. Bank,* 955 F.2d 930, 934 (4th Cir. 1992)(quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)). Moreover, the "Plaintiffs' right 'to choose a Federal forum where there is a choice cannot be properly denied.'" *Justice,* 41 F.4th at 337 (quoting *Willcox v. Consol. Gas Co.,* 212 U.S. 19, 40 (1909)).

Under the *Colorado River* doctrine, however, "a federal court may abstain from exercising jurisdiction over a duplicative federal action for purposes of 'wise judicial administration.'" *VonRosenberg v. Lawrence,* 849 F.3d 163, 167 (4th Cir. 2017)(citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818 (1976)). The *Colorado River* doctrine must be applied "parsimoniously." *Id.* (quoting *Chase Brexton,* 411 F.3d at 463). The "task is not 'to find some substantial reason for the *exercise* of federal jurisdiction by the district court;' rather the task is to ascertain whether 'exceptional circumstances,' the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *VonRosenberg,* 849

F.3d at 168 (emphasis in original)(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983)).

"The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *Chase Brexton,* 411 F.3d at 463; *VonRosenberg,* 849 F.3d at 168. The Fourth Circuit has "strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical." *Chase Brexton,* 411 F.3d at 464; *VonRosenberg,* 849 F.3d at 168. In the ongoing State case, T.M. is the sole plaintiff/appellant. Significantly, because T.M.'s parents, J.M. and A.M., are also plaintiffs, this action, and the State action in which the Consent Order was issued, are *not* parallel suits. This is fatal to *Colorado River* abstention. *See Chase Brexton,* 411 F.3d at 464 (no duplicity where abstention would deprive five of the seven plaintiff healthcare providers of an opportunity to litigate their claims). As in *Chase Brexton,* to abstain in favor of the State suit here will deprive two of the three federal plaintiffs, J.M. and A.M., of an opportunity to litigate their claims even though the Consent Order clearly purports to apply to them, not just to T.M. They have every right to join in this Federal action.

In addition to the dissimilarity of plaintiffs in the State action, "abstention should be the exception, not the rule, and it may be considered only when 'the parallel state-court litigation will be an adequate vehicle for the complete *and prompt* resolution of the issues between the parties.'" *Chase Brexton,* 411 F.3d at 464 (quoting *Moses H. Cone,* 460 U.S. at 28)(emphasis added). The "parallel State case" is positioned as a newly noticed appeal to the Maryland Appellate Court. While this Court can take up the pending TRO within a matter of days and conduct a merits hearing soon thereafter, common experience makes it obvious that resolution of the State appeal will take months if not a year or more for the appellate court to rule. Abstention under these circumstances

is improper; all the plaintiffs in this case are entitled to prompt resolution of their claims given the serious nature of the ongoing constitutional violations alleged.

WHEREFORE, for the reasons and authorities provided herein, this Court should not abstain from exercising the jurisdiction it clearly has to resolve this important matter promptly. Plaintiffs respectfully request that the pending Motion for TRO be scheduled for hearing at the Court's earliest possible convenience.

July 3, 2023                                        Respectfully Submitted,


                                                    /s/Ray M. Shepard
                                                    Ray M. Shepard, Bar No. 09473
                                                    The Shepard Law Firm, LLC
                                                    122 Riviera Drive
                                                    Pasadena, Maryland 21122
                                                    Phone: 410-255-0700
                                                    Facsimile: 443-773-1922
                                                    Email: Ray@Shepard.Law

                                                    *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 3rd day of July 2023, a copy of the PLAINTIFFS' RESPONSE TO JUNE 26, 2023 LETTER ORDER, was served by CM ECF on the following:

>Mark S. Saudek
>218 North Charles Street, Suite 400
>Baltimore, Maryland 21201
>msaudek@gejlaw.com
>
>*Attorneys for Defendants University of Maryland Medical System Corporation, Baltimore Washington Medical Center, Inc., Kathleen McCollum, and Thomas J. Cummings, Jr., M.D.*

And I further certify that, on this 3rd day of July 2023, a copy of the PLAINTIFFS' RESPONSE TO JUNE 26, 2023 LETTER ORDER, was served on the following parties by first-class mail, postage prepaid:

>Be-Live-It Therapy LLC *trading as*
>Family Intervention Partners
>Serve: Becky Tatani
>8301 Ashford Blvd #816
>Laurel, MD 20707
>
>Anne Arundel County *operating as the*
>Anne Arundel Crisis Intervention Team
>Serve: Steuart Pittman
>County Executive
>44 Calvert Street
>Annapolis, MD 21401

>/s/Ray M. Shepard
>Ray M. Shepard, Bar No. 09473