IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| T.M. *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Case No.: SAG-23-01684 |
| v. | * | |
| | * | |
| UNIVERSITY OF MARYLAND | * | |
| MEDICAL SYSTEM | * | |
| CORPORATION *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * *

## MEMORANDUM OPINION

Plaintiff T.M., alongside her parents, J.M. and A.M. (collectively, "Plaintiffs"), bring this action against University of Maryland Medical System Corporation ("UMMSC"), the Baltimore Washington Medical Center ("BWMC"), and two individuals (collectively, "Defendants"),[1] alleging that a state court consent order violates T.M.'s federal and state constitutional rights and should be void and unenforceable. ECF 1. Defendants have filed a motion to dismiss, ECF 40, which Plaintiffs opposed, ECF 47. Defendants then filed a reply, ECF 65, to which Plaintiffs filed a surreply, ECF 72. The Court has carefully reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Defendants' motion to dismiss will be GRANTED with prejudice as to T.M.'s claims and without prejudice as to J.M.'s and A.M.'s claims.

---

[1] Plaintiffs also brought this action against Anne Arundel County and Be-Live-It Therapy LLC. On January 22, 2024, the Court dismissed Anne Arundel County from this action. ECF 64. On April 26, 2024, the Clerk of Court entered default as to Be-Live-It Therapy LLC. ECF 76.

I.  **BACKGROUND**

The facts described herein are derived from Plaintiffs' Complaint and are taken as true for purposes of this motion. T.M. has been diagnosed with Hashimoto's Thyroiditis and Non-Celiac Gluten Sensitivity, which causes changes to her mental status when she ingests any amount of gluten. ECF 1 ¶ 28. On March 23, 2023, T.M. accidentally ingested gluten, triggering a psychotic episode that resulted in a police escort to BWMC. *Id.* ¶¶ 41–42. Despite a request for voluntary admission, T.M. was involuntarily admitted to BWMC after an administrative hearing on April 11, 2023. *Id.* ¶¶ 57–58, 61, 63. During the administrative hearing, an administrative law judge heard testimony from Dr. Thomas Cummings, Jr., M.D., who treated T.M. at BWMC and opined that T.M. was "very impaired cognitively," and that T.M.'s father, J.M., was coercing his daughter to request voluntary admission. *Id.* ¶¶ 64–65. Following the administrative hearing, Dr. Cummings and BWMC scheduled a clinic review panel and obtained a panel order to forcibly inject T.M. with antipsychotic medications. *Id.* ¶ 78. T.M. immediately appealed the panel order and another administrative hearing was scheduled for April 25, 2023. *Id.* ¶ 81. But before that hearing, Defendants voluntarily withdrew their request for forcible injections because T.M. commenced ingesting medications after the clinic review panel. *Id.* ¶ 84.

Nonetheless, on April 24, 2023, Dr. Cummings attempted to inject T.M. *Id.* ¶¶ 86, 88. When T.M. refused, Dr. Cummings re-scheduled a clinic review panel for April 27, 2023. *Id.* ¶ 89–90. The panel affirmed Dr. Cummings's renewed request for forcible injection, which T.M. then appealed. *Id.* ¶¶ 104, 111. At another hearing on May 2, 2023, Dr. Cummings testified that forcible injection was necessary because T.M. was unwilling to orally ingest her medications and was unwilling to shower. *Id.* ¶¶ 115, 124. The administrative law judge affirmed the panel's

finding, determining that BWMC complied with statutory requirements for requesting and imposing forcible injections. *Id.* ¶ 128.

On May 24, 2023, Dr. Erik Messamore, a psychiatric physician and professor of psychiatry, remotely interviewed T.M. and described her general appearance and behavior in the interview as "pleasant and cooperative" with no evidence of psychosis. *Id.* ¶¶ 157, 160; ECF 2 at 4–5. After the interview and upon his review of T.M.'s recent hospitalization records, Dr. Messamore opined that T.M.'s condition markedly improved and did not "fulfill criteria for inpatient care." ECF 2 at 7; ECF 1 ¶ 164. Dr. Messamore's findings were corroborated by another psychiatrist who personally observed T.M. on April 21, 2023, and May 1, 2023, and concluded that she "no longer appeared actively psychotic." ECF 1 ¶¶ 167–69; ECF 2-15.

T.M. soon thereafter filed lawsuits in state and federal court in an effort to secure her release from BWMC. One of the federal lawsuits, filed in this Court, alleged that Defendants were unlawfully detaining T.M. against her will, and it sought an emergency motion for a temporary restraining order. *See* Emergency Mot. for TRO and Prelim. Inj., *Doe v. Univ. of Md. Med. Sys. Corp.*, Civ. No. SAG-23-1572 (D. Md. June 9, 2023). This Court scheduled a hearing on the emergency motion on June 13, 2023, but immediately prior to the hearing, the parties reached a Consent Order in a simultaneous habeas action in state court, resolving their dispute. *See* ECF 2-1. T.M. then moved to cancel the June 13, 2023, hearing and later dismissed the initial federal action. *See* Notice of Dismissal with Prejudice, *Doe v. Univ. of Md. Med. Sys. Corp.*, Civ. No. SAG-23-1572 (D. Md. June 26, 2023).

The state court Consent Order provided for T.M.'s immediate release from BWMC subject to various conditions, including that she (1) obtain a new treating psychiatrist and continue to take her hospital-prescribed medications; (2) regularly meet and consult with a third-party provider

regarding her treatment and medication; (3) accept a referral to the Anne Arundel Crisis Intervention Team ("AACIT") and follow their recommendations; (4) take all prescribed medications; and (5) dismiss with prejudice all of her pending actions against UMMSC, BWMC, and their employees. ECF 2-1. The Consent Order also ordered that J.M. and A.M. (1) monitor and remind T.M. of her obligations to take her prescribed medications; (2) immediately notify the AACIT and the third-party provider if she did not comply with her medication obligations; and (3) dismiss with prejudice their pending actions against BWMC, UMMSC, its employees and its attorneys. *Id.* A state court judge and five attorneys representing T.M. signed the Consent Order. *Id.* T.M. was then released from BWMC.

## II.   PROCEDURAL HISTORY

Just ten days later, with entirely different counsel, T.M., along with A.M. and J.M., commenced this second federal action on June 22, 2023, alleging that the Consent Order had been entered under duress and violated the Maryland Declaration of Rights and the Due Process Clause of the Fourteenth Amendment. ECF 1 ¶¶ 188–99. Plaintiffs seek a declaratory judgment that the Consent Order is unconstitutional and unenforceable and request injunctive relief against its enforcement. *Id*. at 39. Initially, this Court questioned its jurisdiction to rule on the validity of a state court Consent Order and ordered briefing from the parties explaining why the instant case was properly in federal court. ECF 10. Plaintiffs defended jurisdiction by asserting that neither the *Rooker-Feldman* doctrine nor any doctrine of abstention applied, ECF 17, but before the Court issued its ruling on jurisdiction, it became aware that T.M. also appealed the state court Consent Order to the Appellate Court of Maryland on June 28, 2023, ECF 21; *see* ECF 17 at 8 n.5. In light of the seemingly identical issues raised in the state court appeal, the Court ordered and received additional briefing on relevant abstention doctrines. ECF 24, 25, 26. After review, the Court

concluded that abstention was inappropriate, ECF 27, but made no explicit findings with respect to the *Rooker-Feldman* doctrine. The Court then proceeded to consider Plaintiffs' motion for a temporary restraining order, ECF 6, eventually denying it at a hearing on September 5, 2023, ECF 34. Defendants then filed the instant motion to dismiss on October 23, 2023. ECF 40.

Unbeknownst to this Court, on October 31, 2023, T.M. requested a stay of the pending state court appeal pending the outcome of this federal case. ECF 81-1. The Appellate Court of Maryland entered the stay on November 3, 2023, ECF 79, and T.M. twice requested the stay be extended while this action remains open, ECF 81-2, 81-3. The Court first learned of the stay in recent correspondence with the parties. ECF 81.

### III. *ROOKER-FELDMAN* DOCTRINE

#### A. Legal Standard

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting [federal] court review and rejection of those judgments." *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 319 (4th Cir. 2016) (internal quotation marks omitted) (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)). "[J]urisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *see* 28 U.S.C. § 1257. This Court has an independent obligation to examine whether *Rooker-Feldman* precludes its adjudication of a pending claim. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (observing that federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it"); *see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir.

2004) ("[Q]uestions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court.").

The Supreme Court has long recognized that the jurisdiction of district courts is "strictly original," such that they may not entertain petitions for relief from allegedly unconstitutional state judgments. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414–16 (1923) (federal district court properly concluded that it could not entertain parties' petition to declare state court judgment "null and void"). In analyzing a complaint, district courts must endeavor to separate and preserve claims that survive judicial inspection from those that fail the jurisdictional threshold. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 (2005). Courts may properly analyze challenges to state rules, laws, and regulations, but only insofar as the analysis "do[es] not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *see also id.* (federal district courts "do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"). The Supreme Court has emphasized the narrow scope of *Rooker-Feldman*. *See Exxon Mobil Corp.*, 544 U.S. at 292. Federal district courts do not lack jurisdiction merely because "a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. Rather, *Rooker-Feldman* is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284; *see also Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994); *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006). As such, the *Rooker-Feldman* doctrine applies only when: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of 'injuries caused by state-court judgments;' (3) the

6

state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" *Willner v. Frey*, 243 F. App'x 744, 746 (4th Cir. 2007) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

### B. Analysis

T.M.'s claims satisfy *Rooker-Feldman*'s four conditions.[2] First, she qualifies as a "state-court loser," complaining of injuries suffered in state court. *Exxon Mobil Corp.*, 544 U.S. at 284. T.M. was a party to the state court action, has specifically alleged that the Consent Order deprived her of her constitutional rights, and seeks a declaration that it is void and unenforceable. This is enough to find a "loss" in state court, despite the apparent agreement between T.M. and the Defendants. *See Dockery v. Heretick*, Civ. No. 17-4114, 2019 WL 2122988, at *9 (E.D. Pa. May 14, 2019) (recognizing that a state court proceeding need not be adversarial to be barred by *Rooker-Feldman*); *accord Crawford v. Adair*, Civ. No. 3:08CV281, 2008 WL 2952488, at *2 (E.D. Va. July 29, 2008); *see also Hartford Life Ins. Co. v. Solomon*, 910 F. Supp. 2d 1075, 1081–82 (N.D. Ill. 2012) (noting that a plaintiff "did not lose in the conventional sense" when the state court approved an agreement between the parties, "[b]ut if he had had second thoughts about the deal he struck . . . and attempted to sue in federal court to overturn the order approving the [agreement], he could not have avoided *Rooker-Feldman* by claiming that he was not a 'state-court loser'"); *Johnson v. Orr*, 551 F.3d 564, 568–70 (7th Cir. 2008) (finding that *Rooker-Feldman* barred a plaintiff's suit that sought to overturn an agreed-upon state court order based on alleged violations of his constitutional rights).

---

[2] Her parents' claims do not, as they were not parties to the state court action resulting in the Consent Order. Their claims will be addressed in the Rule 12(b)(6) analysis below.

Second, T.M.'s claims plainly attack the Consent Order itself, not the underlying conduct of Defendants. *See Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006) (explaining that *Rooker-Feldman* did not apply where a plaintiff brought "independent" claims of unlawful discrimination (citing *Exxon Mobil Corp.*, 544 U.S. at 293)). Her Complaint alleges that the Consent Order "purports to control T.M.'s healthcare decisions" and therefore violates the Maryland Declaration of Rights and the Due Process Clause of the Fourteenth Amendment. ECF 1 ¶ 188. She also makes clear that the instant action "does not question the constitutionality of T.M.'s treatment while involuntarily committed; rather this case challenges the Consent Order which applies **after** T.M.'s release from the BWMC." ECF 47 at 24 (emphasis in original); *see Johnson*, 551 F.3d at 568 ("To determine whether *Rooker-Feldman* bars a claim, we look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff." (emphasis in original) (citation omitted)). That T.M. "do[es] not challenge any action taken *pursuant* to the Consent Order" makes no difference. ECF 17 at 7 (emphasis in original). When a plaintiff claims constitutional or other injuries suffered upon entry of a state consent order, she is claiming that a state court judgment caused her injury.[3] *See Johnson*, 551 F.3d at 568 ("[Plaintiff's] injury . . . was caused by the agreed order. He cannot avoid the *Rooker-Feldman* bar by alleging that he suffered this injury as a result of violations of his constitutional rights."); *Efreom v. McKee*, 46 F.4th 9, 18 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023) ("[Plaintiffs'] attempt to undo the state-court rulings approving the settlement is precisely the sort of 'end-run around a final state-court

---

[3] The Court also easily concludes that the Consent Order is a judgment for purposes of *Rooker-Feldman*. *See Johnson*, 551 F.3d at 570 ("A settlement approved by a state court is a judgment for purposes of *Rooker-Feldman*." (citing *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urb. Dev.*, 383 F.3d 552, 556 (7th Cir. 2004))); *Efreom v. McKee*, 46 F.4th 9, 18 n.8 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023) (citing *Crestview* and assuming, without deciding, that a settlement agreement was a final judgment under *Rooker-Feldman*).

judgment' that the *Rooker-Feldman* doctrine proscribes." (citation omitted)); *see also Crawford*, 2008 WL 2952488, at *2; *Anderson v. Chesley*, Civ. No. 2:10-116-DCR, 2011 WL 3319890, at *3–*5 (E.D. Ky. Aug. 1, 2011); *Delfrate v. Shanner*, 229 F.3d 1151 (Table), 2000 WL 1206584, at *2 (6th Cir. Aug. 17, 2000).

Third, the Court finds that the Consent Order has become sufficiently final to trigger *Rooker-Feldman* as to T.M.'s claims. There is no doubt that this federal action commenced after the circuit court entered the Consent Order, but T.M.'s appeal to the Appellate Court of Maryland made it unclear, at least initially, whether the Consent Order had become final for purposes of applying *Rooker-Feldman*. Indeed, when T.M. first brought the appellate case to the attention of this Court on July 3, 2023, she persuasively argued that *Rooker-Feldman* could not apply to a pending state appeal that remained "on track for potential review by the U.S. Supreme Court." ECF 17 at 8 (quoting *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 322 (4th Cir. 2016)).

However, this Court no longer finds that argument persuasive in light of the stay of the pending state appeal. That appeal now awaits resolution of this federal case and is no longer "on track for potential review by the U.S. Supreme Court." *Thana*, 827 F.3d at 322; *see Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005) (noting that if the state action has reached a point where neither party seeks further action, then the state proceedings have functionally "ended" for purposes of *Rooker-Feldman*). Moreover, the record demonstrates that T.M. herself "sought to bypass the Supreme Court's appellate jurisdiction under 28 U.S.C. § 1257(a)" by requesting and obtaining the stay of the state appeal. *Id.* at 321; *see* ECF 81-1. In this circumstance, then, she has "frustrate[d] the Supreme Court's exclusive jurisdiction over" the state court judgment, *Thana*, 827 F.3d at 321, and has impermissibly

9

attempted to circumvent the state system to seek review of the unfavorable state judgment in this federal court of first instance, *see Exxon Mobil Corp.*, 544 U.S. at 283–84.[4] In other words, T.M. would have this federal court effectively entertain an appeal of a state court judgment that is presently insulated from all further state court review. Because federal district courts are empowered to exercise original, not appellate, jurisdiction over state court judgments, T.M.'s claims must be "properly dismissed for want of subject-matter jurisdiction." *Id.*

Fourth and finally, T.M.'s claims "specifically invite district court review and rejection of a state-court judgment." *Accohannock Indian Tribe v. Tyler*, Civ. No. SAG-21-02550, 2021 WL 5909102, at *18 (D. Md. Dec. 14, 2021) (quoting *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020)). She specifically requests a declaration that the Consent Order is "unconstitutional, unenforceable, and void *ab initio*" and a permanent injunction against its enforcement. ECF 1 at 39; *see Rooker*, 263 U.S. at 414 (noting that the plaintiff sought "to have a judgment of a circuit

---

[4] The Court is no longer persuaded that the pending state appeal, even if it had not been stayed, would necessarily foreclose applying *Rooker-Feldman* to T.M.'s claims. As this Court recognized previously, the Fourth Circuit has not specifically determined whether orders pending appeal from a state trial court are sufficiently final as to fall within *Rooker-Feldman*. *Accohannock Indian Tribe v. Tyler*, Civ. No. SAG-21-02550, 2021 WL 5909102, at *18 (D. Md. Dec. 14, 2021). *Compare Horowitz v. Cont'l Cas. Co.*, 681 F. App'x 198, 200 (4th Cir. 2017) (per curiam) (affirming without discussion the district court's dismissal of *Rooker-Feldman* of a state court judgment pending appeal to the Maryland Court of Special Appeals), *with Thana*, 827 F.3d at 321 (musing that "if we apply strictly the Supreme Court's instruction . . . we would conclude that the doctrine does not apply here because the district court here was not called upon to exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which a decision could be had'" (emphasis omitted) (internal citations omitted)). This Court also found persuasive that district courts in this circuit have extended *Rooker-Feldman* to non-final orders from state trial courts. *Accohannock Indian Tribe,* 2021 WL 5909102, at *18 (citing *Field Auto City, Inc. v. Gen. Motors Corp.*, 476 F. Supp. 2d 545, 553 (E.D. Va.), *aff'd*, 254 F. App'x 167 (4th Cir. 2007); *see also RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380 (6th Cir. 2021). However, this Court need not and does not decide here whether a pending unstayed state appeal forecloses *Rooker-Feldman*. It simply notes that the purpose of *Rooker-Feldman*—to prevent de facto appeals from state courts to federal courts—is likely implicated here, regardless of the stay of the state appeal.

court in Indiana, which was affirmed by the Supreme Court of the state, declared null and void"); *Crawford*, 2008 WL 2952488, at *2 (finding that the plaintiff "complain[ed] about the signing of the Consent Order, the settlement, and her counsel" and was "clearly requesting district court review and rejection of the judgment of the [state] [c]ircuit [c]ourt" (internal quotation marks and citation omitted)). If T.M. believes the state court was wrong to enter the Consent Order or that she entered it under duress, her options are to ask the state circuit court to set aside its own Consent Order or to continue to her appeal in the state system. Because her relief lies in the state courts, she cannot avoid *Rooker-Feldman* simply by bypassing those courts. *Johnson*, 551 F.3d at 569. Accordingly, T.M.'s claims must be dismissed with prejudice for lack of subject matter jurisdiction.

## IV. RULE 12(B)(6) MOTION TO DISMISS A.M.'S AND J.M.'S CLAIMS

### A. Legal Standard

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the

factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

**B. Analysis**

Defendants seek dismissal of A.M.'s and J.M.'s claims on the basis that neither has asserted a claim for relief under 42 U.S.C. § 1983. The Court agrees. A.M. and J.M., though not parties to the Consent Order, have asserted that the Consent Order allegedly violates their First Amendment rights by compelling them to notify appropriate third parties if T.M. becomes non-compliant with her prescribed medications and by requiring their dismissal of then-pending state and federal lawsuits. As Plaintiffs' counsel conceded during the TRO hearing, however, these allegations—or any facts to support them—are missing from the Complaint. *See* ECF 41-2 (Sept. 5, 2023, Hr'g Tr. at 4:10). J.M. and A.M. have not sought to amend the Complaint since that hearing. Plaintiffs extensively discuss their purported First Amendment claims in their briefs on Defendants' motion to dismiss, but it is axiomatic that Plaintiffs cannot amend their complaint through motions briefing. *See, e.g.*, *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Accordingly, the Court must dismiss A.M.'s and J.M.'s claims without prejudice because they have failed to state plausible claims for relief in their Complaint.[5]

---

[5] Even if Plaintiffs had alleged First Amendment claims in the Complaint, it is unlikely that J.M. and A.M. would be able to allege facts sufficient to support a plausible First Amendment claim or to support their standing in this case, given that the Consent Order is unenforceable against them as non-parties. *See Bacon v. City of Richmond*, 475 F.3d 633, 643 (4th Cir. 2007).

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, ECF 40, is GRANTED with prejudice as to T.M.'s claims and without prejudice as to J.M.'s and A.M.'s claims. A separate Order follows, which will close this case.


Dated: July 23, 2024                                              /s/
                                                         Stephanie A. Gallagher
                                                         United States District Judge